# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**COLEMAN & WILLIAMS, LTD.,**

        **Plaintiff,**

v.                                   Case No. 05-C-0466

**ROBERTA GASSMAN,**

        **Defendant.**[1]

---

## DECISION AND ORDER

Plaintiff Coleman & Williams, Ltd., an African-American owned accounting firm, alleges that defendant Roberta Gassman ("Gassman"), Secretary of Wisconsin's Department of Workforce Development ("DWD"), violated 42 U.S.C. §§ 1981 and 1983 by making false statements about it and removing it from its list as an approved provider of accounting services without granting it due process. Defendant now moves for summary judgment.

## I. FACTS

In a previous decision in the present case, I summarized the facts as follows:

> Pursuant to a contract with DWD, OIC administered the Wisconsin Works ("W-2") program in Milwaukee. (Bernstein Aff. Ex. 1.)[1] For certain purposes, OIC was a division of DWD and required to use an accountant/auditor approved by DWD. Prior to 2004, plaintiff was approved by DWD as a provider of accounting and auditing services and provided such services to OIC. (Id. Ex. 2.)[2] Around 2004, OIC became the subject of a federal investigation involving mismanagement and corruption. The investigation led to the criminal convictions of OIC's chief operating officer, Carl Gee, counsel, Mark Sostarich, and a state senator, Gary George, who was closely associated with OIC.[3]

---

[1] I have amended the caption to reflect my dismissal of DWD as a defendant.

In 2004, DWD removed plaintiff as OIC's auditor. On February 10, 2005, the Milwaukee Journal-Sentinel quoted Gassman as stating that plaintiff "gave a false picture" of OIC's finances. (Compl. ¶ 6.) On February 13, 2005, the same paper quoted Gassman as stating that plaintiff "provided extremely inaccurate information" about OIC's finances and that if it had done a better job of auditing, OIC "would have had information that would have allowed them to correct and address problems." (Compl. ¶ ¶ 7 & 8.)

On February 14, 2005, DWD informed plaintiff that as a result of its performance as OIC's auditor, DWD had removed it from its list of approved providers of accounting and auditing services. On February 22, 2005, the State of Wisconsin Investment Board notified plaintiff that based on the newspaper articles it was re-evaluating its use of plaintiff's services. On March 2, 2005, Gassman advised the state legislature that DWD had relied on plaintiff's annual audits of OIC that regularly gave it a clean bill of health.

---

[1] Exhibit 1 to Bernstein's affidavit is a copy of the contract between DWD and OIC for the period January 1, 2004 to December 31, 2005. The contract is a public record. I may take judicial notice of public records in addressing a motion to dismiss. Palay v. United States, 349 F.3d 418, 425 n.2 (7th Cir. 2003).

[2] Exhibit 2 to Bernstein's affidavit consists of a copy of DWD's approved accounting and auditing services contract and a list of approved providers of such services. These documents are also public records of which I may take judicial notice.

[3] The convictions are also public records, of which I may take judicial notice. See United States v. Gee, No. 03-CR-259 (E.D. Wis. Jan. 25, 2005) (judgment); United States v. Sostarich, No. 03-CR-260 (E.D. Wis. Mar. 11, 2005) (judgment); United States v. George, No. 03-CR-259 (E.D. Wis. Aug. 11, 2004) (judgment).

---

Coleman & Williams, Ltd. v. State of Wis. Dep't of Workforce Development, 401 F. Supp. 2d 938, 940-41(2005).

I will provide additional facts in the course of the decision.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating a motion for summary

2

judgment, I must draw all inferences in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. DISCUSSION

**A.    Section 1983 Claim**

In order to prove a violation of § 1983, plaintiff must establish that Gassman deprived it of a federal constitutional right while acting under color of state law. Bublitz v. Cottey, 327 F.3d 485, 488 (7th Cir. 2003). The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. 14 § 1. Plaintiff alleges that while acting under color of state law, Gassman deprived it of liberty without affording it due process. The type of claim that plaintiff seeks to assert is sometimes known as a "stigma-plus" claim. See Paul v. Davis, 424 U.S. 693, 701, 711-12 (1976); see also Siegert v. Gilley, 500 U.S. 226, 234 (1991); Doyle v. Camelot Care Ctrs., Inc., 305 F.3d 603, 617 (7th Cir. 2002).

For purposes of this discussion, I will assume that as a corporation, plaintiff has a liberty interest that is safeguarded by the Fifth and Fourteenth Amendments and that accordingly it may assert a stigma-plus claim. See Coleman & Williams, Ltd., 401 F. Supp. 2d at 945. In order to establish such a claim, plaintiff must show that defendant made a stigmatizing statement about it and incidental thereto caused it substantial economic harm as, for example, by putting it out of business or formally debarring or broadly precluding it from being considered for state work. See Old Dominion Dairy Prods., Inc. v. Sec'y of Defense, 631 F.2d 953, 963 (D.C. Cir. 1980) (stating that "this sudden loss of government work effectively put Old Dominion out of business"); see also Larry v. Lawler, 605 F.2d

3

954, 959 (7th Cir. 1978); <u>Trifax Corp. v. District of Columbia</u>, 314 F.3d 641, 643-44 (D.C. Cir. 2003). The key inquiry is whether incidental to attacking plaintiff's reputation, defendant sufficiently altered plaintiff's economic status such that the alteration amounted to a deprivation of liberty.

For the following reasons, I conclude that plaintiff has failed to present sufficient evidence to enable a reasonable jury to conclude that defendant altered its status sufficiently to cause it to be deprived of a liberty interest. First, plaintiff has not gone out of business. Its gross receipts in the year after defendant made the comments dropped only slightly. Further, plaintiff presents no evidence that defendant's actions caused the drop.

Second, the evidence indicates that defendant did not debar plaintiff from contracting with the state. In fact, notwithstanding that Bernstein informed plaintiff that DWD would not longer include it on its list of preferred W-2 providers, the evidence indicates that DWD never actually removed plaintiff from the list. Further, DWD did not remove plaintiff from any contract then in effect. Although DWD has not recently contracted with plaintiff, I cannot conclude that this is significant because plaintiff presents no evidence as to how much work DWD previously provided it. It appears that at least a portion of plaintiff's previous DWD-related work was for OIC, but OIC no longer exists.

Finally, plaintiff fails to establish that defendant broadly precluded it from contracting with the state. The evidence indicates that plaintiff continues to perform work for state agencies. For example. plaintiff continues to perform work for the state's Investment Board. Further, plaintiff has recently entered into two contracts with the state university, one to audit an entity associated with the university and another to audit a campus radio

station. Plaintiff argues that for various reasons, the fact that it is still doing state work is insignificant but this fact makes clear that defendant did not shut plaintiff out of state contracts. Additionally, the record contains no evidence that there is a substantial likelihood that plaintiff's involvement with OIC will have any permanent consequences insofar as government contracting is concerned.

In summary, since February and March 2005, when defendant made the comments to which plaintiff objects, plaintiff has not gone out of business, has not been formally debarred or broadly precluded from doing work for the state and has not shown that it will be substantially harmed in the future. Thus, plaintiff has failed to demonstrate that defendant sufficiently altered plaintiff's economic status such that the alteration amounted to a deprivation of liberty

For the above reasons, I will grant defendant's summary judgment motion with respect to plaintiff's § 1983 claim.

**B.   Section 1981 Claim**

Section 1981 confers on "all persons . . . the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." I assume for purposes of this discussion that plaintiff may bring a § 1981 claim. Coleman & Williams, Ltd., 401 F. Supp. 2d at 947. The purpose of § 1981 is "to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race." McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 295 (1976). Thus, in order to prevail on its § 1981 claim, plaintiff must establish that defendant significantly and discriminatorily interfered with its ability to obtain state contracts and, as a result, caused it harm. Plaintiff's § 1981 claim fails because, as discussed, plaintiff fails to establish that defendant significantly interfered with its ability to obtain state

5

contracts. Therefore I will grant defendant's summary judgment motion with respect to plaintiff's § 1981 claim.

### IV. CONCLUSION

For the reasons stated,

**IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED**, and this case is **DISMISSED.**

Dated at Milwaukee, Wisconsin this 14 day of June, 2007.

/s_____
LYNN ADELMAN
District Judge